IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GUARDIAN INSURANCE COMPANY<br><br>**Plaintiff**<br><br>v.<br><br>SPIRITED, LLC<br><br>**Defendant** | **CIVIL NO.** 21-1631(RAM) |

### OPINION AND ORDER GRANTING DECLARATORY JUDGMENT

RAÚL M. ARIAS-MARXUACH, District Judge

This matter comes before the Court on Plaintiff Guardian Insurance Company's ("Plaintiff" or "GUARDIAN") *Motion for Default Judgment*. (Docket No. 10). Having reviewed the record, the Court **GRANTS** Plaintiff's *Motion for Default Judgment* at Docket No. 10.

#### I. PROCEDURAL BACKGROUND

On December 28, 2021, Plaintiff filed a *Complaint for Declaratory Judgment* pursuant to 28 U.S.C. §§ 2201-2202 regarding a marine insurance contract dispute against SPIRITED, LLC (subsequently referred to as "SPIRITED," the "Insured," or "Defendant"). (Docket No. 1). On January 13, 2022, Plaintiff filed an *Affidavit of Service* evincing that Service of Summons upon Defendant was perfected on January 4, 2022. (Docket No. 6). Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), SPIRITED was required to file an answer or responsive pleading **on or before January 25,**

**2022** (*i.e.*, within 21 days after being served with the summons and complaint). However, **no such answer or responsive pleading was filed**.

Accordingly, on January 28, 2022, GUARDIAN moved for entry of default against Defendant. (Docket No. 7). On February 11, 2022, the Court granted Plaintiff's motion and the Clerk of the Court entered default upon Defendant. (Docket Nos. 8 and 9). On February 17, 2022, GUARDIAN filed the pending *Motion for Default Judgment*. (Docket No. 10). Subsequently, on March 10, 2022, in compliance with Local Rule 55(a), Plaintiff filed an *Informative Motion* notifying that notice of entry of default, as well as copy of the motion, was sent by certified mail to Defendant, its resident agent, and its legal counsel. (Docket No. 11).

## II.  LEGAL STANDARDS

### A. Default Judgment

Pursuant to Fed. R. Civ. P. 55(b), "a plaintiff 'must apply to the court for a default judgment' where the amount of damages claimed is not a sum certain." Vazquez-Baldonado v. Domenech, 792 F. Supp. 2d 218, 221 (D.P.R. 2011) (quoting Fed. R. Civ. P. 55(b)). In the case at bar, Plaintiff does not seek a certain amount of damages, rather declaratory judgment finding that Defendant is not entitled to coverage pursuant to the terms of the insurance policy issued by GUARDIAN. (Docket No. 1).

"The default of a defendant constitutes an admission of all facts well-pleaded in the complaint." Metro. Life Ins. Co. v. Colon Rivera, 204 F. Supp. 2d 273, 274 (D.P.R. 2002) (collecting cases). *See also* Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999) ("[a] party who defaults is taken to have conceded the truth of the factual allegations in the complaint"). However, following entry of default, the court may independently "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citing Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir.1992)).

**B. Declaratory Judgment**

The Declaratory Judgment Act ("DJA") creates the federal declaratory judgment remedy, providing:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Supreme Court has explained that the phrase "case of actual controversy" in the DJA "refers to the type of "Cases" and "Controversies" that are justiciable under Article III" of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549

U.S. 118, 127 (2007). In other words, "[t]he declaration requested must fall within 'the type of relief that Article III allows courts to give—'decree[s] of a conclusive character' adjudicating adverse parties' actual rights and interests.'" WM Cap. Partners 53, LLC v. Barreras Inc., 373 F. Supp. 3d 350, 360 (D.P.R. 2019) (quoting In re: Financial Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 111 (1st Cir. 2019)). Notably, "the use of declaratory judgments in insurance cases has been very common[,]" and is routinely utilized to determine the coverage of a policy among other "rights and duties of the insurer and the insured." 10B Wright & Miller, Federal Practice and Procedure: Civil § 2760 (4th ed. 2022).

### III. FINDINGS OF FACT[1]

**A. The Parties**

1. GUARDIAN is a corporation organized and existing under the laws of the St. Thomas, United States Virgin Islands, authorized by the Puerto Rico Department of State to conduct business in Puerto Rico and authorized by the Office of the Commissioner of Insurance of the Commonwealth of Puerto Rico to act as an insurer for various insurance lines, including ocean marine insurance, with principal place of business located at Guaynabo, Puerto Rico.

---

[1] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

2. SPIRITED is a limited liability company, with an office listed in the Policy at 38 St. Thomas Drive, Palm Beach Gardens, Florida 33418 and at 7901 4th St. N. STE 300, St. Petersburg, Florida 33702 as per the information provided by the Florida Department of State and is a Named Insured under GUARDIAN's policy.

3. On or about July 12, 2021, SPIRITED submitted a Private Yacht Policy Application to GUARDIAN (the "Application") through Fulcro Insurance, Inc., insurance producers acting on its behalf.

4. Based upon the information contained in the Application, GUARDIAN issued a marine insurance policy Number MAR14574 (the "Policy") to Defendant covering a 70' Monte Carlo Yacht, HIN MCY70012N213, built in 2013 and named XIANA (the "Vessel").

5. The Policy had an effective period running from August 2, 2021 to August 2, 2022, providing Hull, P&I, Personal Effects, Medical Payments and Uninsured Boater's coverage, pursuant to all its terms, conditions, limitations and exclusions.

6. The Vessel's home port is San Juan, Puerto Rico and is documented with the United States Coast Guard, bearing official number 1251670.

7. The Vessel is powered by two MAN marine diesel engines, Model D2868LE433 V8, with 1,200 h.p. each.

**B. Relevant Terms of the Policy**

8. The Policy lists that there are certain types of loss or damages that are excluded from coverage. Specifically, the Policy provides:

> We will not pay for loss or damages, and any related expenses to the Insured Watercraft and equipment, the Trailer and Personal Effects caused directly or indirectly, in whole or in part, which occurs gradually or suddenly from the following perils. Such loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss:
>
> […]
>
> 6. **Lack of reasonable care in the maintenance of the Insured Watercraft**.
>
> […]
>
> 14. **Wear and tear** including, but not limited to, wear and tear of the stuffing box sealing or packing systems.
>
> […]
>
> 15. Deterioration, (including mold, vermin, or marine life) of any kind, marring, denting, cracking, scratching, chipping, osmosis, blistering, electrolysis, **mechanical breakdown** (including, but not limited to, any damage to machinery as result of broken hose(s), clamps(s), filter(s) or belt(s)), electrical breakdown or derangement, corrosion, rust, lack of maintenance, dampness of atmosphere or weathering.
>
> […]
>
> 17. Loss or damage to the Insured Watercraft machinery, including but not limited to, **engine(s)**, transmission(s), strut(s),

   shaft(s), propeller(s), electrical equipment and apparatus including connections and wiring **unless resulting from fire, lighting, explosion, theft, vandalism, stranding or collision** with other vessel, or with any natural, manmade, fixed or floating object, and sinking (unless the cause of the sinking is not otherwise excluded).

(emphasis added).

9. The Policy imposes upon the Insured several duties following any loss. Namely, in the event of any loss, the Insured must:

   1. **Immediately take all possible steps to minimize the loss and protect the insured watercraft from further loss**. As an insured your responsibility is to protect the assets before, during and after the loss. This responsibility is not transferable. We will pay the reasonable expenses incurred in doing this. This does not increase our limit; the named insured must keep accurate record of such costs. **Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder**.

   2. **Give us immediate notification of the loss**, with details as to how, when and where the loss occurred, the property involved, the names and addresses of any injured persons or potential claimants, and the names and addresses of any witnesses.

   3. After a loss, **"you" must protect the Insured Watercraft from further loss and mitigate all damages and act as a prudent uninsured**. This policy limits the amounts of salvage and sue and labor expenses, but these limitations do not relive you of the responsibility to protect the Insured Watercraft from further loss or mitigate all damages.

      […]

> 5. **Cooperate with us in the investigation**, defense or settlement of any loss, and agree to be examined under oath if we so request. Failure to do so within thirty (30) days after our request will result in a denial of your claim.

(emphasis added).

10. The Policy has a choice of law clause providing that it "will be subject to and interpreted in accordance with the General Maritime Law of the United States and the laws of the Commonwealth of Puerto Rico."

**C. Damage to the Vessel**

11. On or about August 9, 2021, after a voyage from Puerto Rico to Highbourne Cay in the Bahamas, the Vessel's master, Christopher Kavanaugh ("Mr. Kavanaugh"), discovered that the port main engine was losing coolant. Mr. Kavanaugh added fresh water to the cooling system of the port main engine since he did not have coolant onboard.

12. On or about August 10, 2021, upon attempting to start the engine, a mechanical breakdown occurred, and Mr. Kavanaugh determined that the port main engine had seized and was inoperable. The Vessel sustained damage to its port main engine.

13. The Vessel continued its voyage to Florida using only the starboard main engine.

14. The incident to the port main engine was first reported to GUARDIAN on or about November 1, 2021, almost three months after the engine had seized.

15. Immediately after receiving notice of the claim, GUARDIAN began its investigation of this loss. GUARDIAN appointed Bill Cosbie & Associates, marine surveyors, naval architects and mechanical engineers, with offices in Fort Lauderdale, Florida, to investigate this claim.

16. On November 2, 2021, Mr. William Cosbie ("Mr. Cosbie") conducted a vessel inspection accompanied by Mr. Kavanaugh. Mr. Cosbie learned that Scarano Marine, a Fort Lauderdale based MAN dealer and repair facility, had already found that the port main engine had suffered an undetermined internal failure and water was found in both the port side exhaust manifold (outboard side) and cylinders.

17. No exterior evidence was found that would cause such a failure. The engine suffered some type of internal failure which caused the ingress of water into the engine.

18. There was a delay between the time of the engine failure (August 10, 2021) and the start of the examination and repair attempt (November 2, 2021).

19. As of the date of filing of the Complaint, December 28, 2021, the Insured had not disassembled the port main engine to determine the cause of the failure, nor had it been able to

explain what caused the ingress of fresh water into the engine.

20. GUARDIAN has requested the Insured provide, among other information, copies of all surveys of the vessel including, but not limited to one conducted on July of 2021, as referenced by you in the insurance application, and any prepurchase surveys; all records, invoices, quotes, reports, and documents pertaining to maintenance and repairs of the vessel, and particularly of the main engines, during the time Insured owned the vessel; the names, addresses, telephone numbers, email and any other contact information of all persons or entities that inspected the damaged engine after August 10, 2021 to present; and the results and reports of any tests including, but not limited to, oil sampling of both engines and generators.

21. SPIRITED failed to produce the requested information.

### IV.  ANALYSIS

The Court will apply Puerto Rico law because the policy has a choice of Puerto Rico law in addition to the general maritime law of the United States. Further, no well-established federal maritime rule has been brought to the Court's attention. *See* Wilburn Boat v. Fireman's Fund. Ins. Co., 348 U.S. 310, 314 (1955); Littlefield v. Acadia Ins. Co., 2005 392 F.3d 1, 5 (1st Cir. 2004) (holding that there is no federal rule governing the interpretation

of marine insurance policy provision at issue and that the issue would be governed by state law); Com. Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)("Generally, in cases involving a marine insurance contract, we will apply state law unless an established 'maritime rule controls the disputed issue, *and* that rule is materially different from state law.'")(quoting Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 54 (1st Cir. 1995)).

The Insurance Code of Puerto Rico (the "Insurance Code") governs insurance contracts, known as policies, in Puerto Rico. *See* P.R. Laws Ann. tit. 26, §§ 1101-1137. Under the Insurance Code, insurance contracts are to be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy." Id. § 1125. Generally, "insurance contracts are considered contracts of adhesion that are liberally interpreted in favor of the insured." Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 382 (D.P.R. 2002) (citing Quiñones Lopez v. Manzano Pozas, 141 D.P.R. 139, 155 (1996); Rosario v. Atl. Southern Ins. Co., 95 D.P.R. 759 (1968)).

When the Insurance Code fails to provide the "interpretative approach" required for a particular controversy, courts look to the Puerto Rico Civil Code for a supplemental source of law guiding

contract interpretation. *See* Marina Aguila v. Den Caribbean, Inc., 490 F. Supp. 2d 244, 248 n. 5 (D.P.R. 2007). The Puerto Rico Civil Code dictates that "[if] terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, **the literal sense of its stipulations shall be observed**." P.R. Laws Ann. tit. 31, § 3471 (emphasis added). In such cases, "the court should confine itself to a literal application of the unambiguous terms of the contract." Gonzalez v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (internal quotations and edits omitted). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation[.]'" Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995); *see also* Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959). In terms of insurance contracts, the District of Puerto Rico has held that although ambiguities arising from an insurance policy should "be resolved in the manner least favorable to the insurer […] this praxis **does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured**." Metlife Capital Corp., 224 F. Supp. 2d at 382 (emphasis added).

It is worth noting that "[a]mbiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision." Hoffman Garcia v. Metrohealth, Inc., 246 F.

Supp. 3d 527, 530 (D.P.R. 2017). Instead, ambiguity "may be found where the policy's language is susceptible to more than one rational interpretation." Id. (quoting Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013)). **Moreover, whether an insurance policy's terms, conditions, and exclusions are clear and unambiguous is a matter of law for courts to determine**. See Marina Aguila, 490 F. Supp. 2d at 249 (quoting Littlefield v. Acadia Ins. Co., 392 F.3d 1, 10 (1st Cir. 2004)).

In the case at bar, SPIRITED's loss is **not** covered under the clear and unambiguous exclusions listed in the Policy. The Policy explicitly excludes:

> Loss or damage to the Insured Watercraft machinery, including but not limited to, engine(s) transmission(s), strut(s), shaft(s) propeller(s), electrical equipment and apparatus including connections and wiring unless resulting from fire, lighting, explosion, theft, vandalism, stranding or collision with other vessel, or with any natural, manmade, fixed or floating object, and sinking (unless the cause of the sinking is not otherwise excluded).

(Fact ¶ 8). Here, the damage was not caused by a "fire, lighting, explosion, theft, vandalism, stranding or collision" with another vessel or object and thus is barred from coverage. (Facts ¶¶ 8, 11). The Policy additionally excludes coverage in the event of: (1) a mechanical breakdown; (2) damages caused by a lack of reasonable care to the vessel; and/or (3) wear and tear. Id.

Defendant also failed to comply with the duties imposed by the Policy. First, the Policy requires that the Insured provide GUARDIAN with immediate notice of any loss. (Fact ¶ 9). However, SPIRITED did not notify the present damage to the Vessel until almost *three months* had passed after the engine had seized. (Fact ¶ 14). Furthermore, Defendant has failed to provide the information requested by GUARDIAN or otherwise cooperate with the investigation, as required by the clear terms of the Policy. (Facts ¶¶ 20-21).

## V. CONCLUSION

In light of the above, the Court **GRANTS** Plaintiff's *Motion for Default Judgment*. Thus, it is hereby **ORDERED AND DECREED** that final judgment be immediately entered against Defendant SPIRITED, LLC declaring that Defendant is not entitled to coverage for the loss detailed above on account of the Policy exclusions and its breach of its duties under the terms and conditions of the Policy.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 27th day of April 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge